UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JIGNESH PURUSHOTTAMBHAI VEKARIA

v.                                    Case No. 8:23-cr-40-VMC-CPT
                                              8:25-cv-867-VMC-CPT

UNITED STATES OF AMERICA

_____/

**ORDER**

This matter is before the Court on Jignesh Purushottambhai Vekaria's pro se construed 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. ## 1 & 1-1; Crim. Doc. ## 74 & 75), which was filed on February 6, 2025. The United States of America responded on May 16, 2025. (Civ. Doc. # 4). Mr. Vekaria filed a reply on June 13, 2025. (Civ. Doc. # 6). The Motion is denied.

I.    **Background**

In July 2023, Mr. Vekaria pled guilty pursuant to a plea agreement to one count of conspiracy to commit money laundering. (Crim. Doc. ## 31, 33, 36). During his plea colloquy, the Magistrate Judge reviewed the plea agreement with Mr. Vekaria, confirming that he understood the charge, its elements, and possible punishments, and that he agreed

1

with the plea's factual basis. (Crim. Doc. # 67 at 31-35, 43-44, 49). Mr. Vekaria confirmed this and agreed that he had sufficient time to review the case and the plea agreement with his counsel, Jeffrey Brown. (Id. at 35, 43, 46). Mr. Vekaria stated that he was freely and voluntarily pleading guilty, without any threats or promises outside the plea agreement having been made. (Id. at 15, 42-43).

Before sentencing, Mr. Brown made numerous objections to the probation officer's calculation of the guidelines in the presentence investigation report on Mr. Vekaria's behalf. (Crim. Doc. # 51 at 22-25, 44-45). He also filed a sentencing memorandum, reiterating Mr. Vekaria's minor role in the conspiracy and asking the Court to "appl[y] the same but not additional specific offense enhancements than his Co-Defendants." (Crim. Doc. # 44). As relevant here, Mr. Vekaria, through Mr. Brown, objected to (1) the two-level enhancement under USSG § 2B1.1(b)(9)(A) for misrepresenting that he was acting on behalf of a government agency and (2) the failure to impose a two-level reduction to his offense level as a minor participant under USSG § 3B1.2(b). (Crim. Doc. # 51 at 22-25).

2

In November 2023, the Court sentenced Mr. Vekaria to 51 months' imprisonment and three years' supervised release. (Crim. Doc. ## 53-54). During the sentencing hearing, Mr. Brown maintained the objection to the USSG § 2B1.1(b)(9)(A) enhancement. (Crim. Doc. # 65 at 8-10). The Court overruled this objection, finding it applicable relevant conduct even though Mr. Vekaria had not personally represented himself as a government agent and noting that the Court "did apply [this enhancement] to the other person" sentenced. (Id. at 11-12).

Additionally, Mr. Brown argued that Mr. Vekaria should receive a minor role reduction under USSG § 3B1.2(b): "When you look at the conspiracy and what Mr. Shah and Mr. Patel did – the vast amount of money; the knowledge that they had that it was in India, the call center; and how all that arranged itself – [Mr. Vekaria] was in this conspiracy for a brief period of time in relation to the others. His monetary proceeds were about $200 a day. So I – if we're looking at what everybody else did, I believe the minor role would be applicable there." (Id. at 10). The Court also overruled this objection because Mr. Vekaria "was not among the minor participants. He may not have been among the major participants, but I don't think his role deserves a reduction

3

based on him being substantially less responsible than the other defendants involved." (Id. at 15).

Mr. Vekaria appealed. (Crim. Doc. # 56). The Eleventh Circuit affirmed his conviction and sentence in November 2024. (Crim. Doc. # 72).

Subsequently, Mr. Vekaria filed two motions in his criminal case in February 2025 that challenge his conviction and sentence. (Crim. Doc. ## 74 & 75). The Court entered a warning pursuant to Castro v. United States, 540 U.S. 375, 383 (2003), warning Mr. Vekaria that the Court intended to construe the Motions as a single 2255 Motion. (Crim. Doc. # 79). The Court directed Mr. Vekaria to advise the Court whether he sought to proceed on the claims in his construed 2255 Motion, amend his construed 2255 Motion, or withdraw his Motion. (Id. at 2). The Court cautioned Mr. Vekaria that "if he fails to file a timely response in compliance with this order, which requires that he advise the Court that he wishes to do one of the above, this cause shall proceed as an action under 28 U.S.C. § 2255, with the Court considering only those claims in his original [Motions]." (Id. at 2-3).

Mr. Vekaria failed to respond to the Castro warning, so the Court has construed his Motions as a single 2255 Motion

4

and opened this civil case. The United States responded to the construed 2255 Motion (Civ. Doc. # 4), and Mr. Vekaria replied. (Civ. Doc. # 6). The Motion is ripe for review.

## II.  Discussion

Mr. Vekaria raises claims of ineffective assistance of counsel. (Civ. Doc. ## 1 & 1-1). As stated in his 2255 Motion, Mr. Vekaria faults his counsel for three alleged failures. First, his counsel allegedly failed to advise him of the "fast track" program under USSG § 5K3.1 that was in effect at the time of sentencing. (Civ. Doc. # 1 at 1-2); see also USSG § 5K3.1 ("Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."). Second, he faults counsel for failing to prevent the Court from imposing the USSG § 2B1.1(b)(9)(A) enhancement. (Civ. Doc. # 1 at 1-2; Civ. Doc. # 1-1 at 1). Finally, he faults counsel for failing to procure a minor-role reduction for Mr. Vekaria.[1] (Civ. Doc. # 1 at 1-2).

---

[1] Mr. Vekaria's reply (Civ. Doc. # 6) could be liberally construed as asserting additional claims. For example, while

These claims have been timely raised and are cognizable. (Civ. Doc. # 4 at 5-6). Mr. Vekaria bears the burden of proof and persuasion on every aspect of his claims. Beeman v. United States, 871 F.3d 1215, 1223-24 (11th Cir. 2017); Rivers v. United States, 777 F.3d 1304, 1316 (11th Cir. 2015).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's

---

he argued in his Motion that his counsel was ineffective for failing to advise him of the "fast track" program under USSG § 5K3.1, Mr. Vekaria changes his argument in the reply to insist that counsel failed to "investigate whether the government might consider a downward departure or variance under USSG [§] 3553(a) for similarly situated non-citizen defendants who receive harsher punishments due to immigration consequences." (Id. at 3). Another example: in his Motion, Mr. Vekaria simply complains that counsel "did nothing to stop the Court" from failing to apply the minor-role reduction (Civ. Doc. # 1 at 1), but expands his claim in his reply to insist that counsel performed ineffectively regarding the minor-role reduction because he allegedly "lacked interest," communicated insufficiently with Mr. Vekaria in preparation for his plea and sentencing, and failed to review every page of discovery with Mr. Vekaria. (Civ. Doc. # 6 at 3-4). To the extent the reply asserts additional claims, these claims are waived. See McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1365 (11th Cir. 2021) ("[A]rguments raised for the first time in a party's reply brief are waived."); Wallace v. United States, No. 8:11-cr-287-SCB-MAP, 2014 WL 12605465, at *5 (M.D. Fla. Jan. 13, 2014) ("Petitioner's § 2255 motion did not contend that appellate counsel was ineffective for failing to argue the Fourth Amendment issues, and this ineffectiveness claim was raised for the first time in his reply brief. . . . Arguments raised for the first time in a reply brief are deemed waived.").

performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Mr. Vekaria must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (citations omitted). In other words, Mr. Vekaria must show that "no competent counsel would have taken the action that his counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted).

To satisfy Strickland's second prong — prejudice — Mr. Vekaria must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "[I]f

a claim fails to satisfy the prejudice component, the Court need not make a ruling on the performance component." <u>Ortiz v. United States</u>, No 8:15-cr-409-VMC-JSS, 2017 WL 6021645, at *2 (M.D. Fla. Jan. 11, 2017).

Here, Mr. Vekaria does not argue that his counsel was ineffective regarding the decision to plead guilty.[2] Rather, Mr. Vekaria complains about counsel's performance at sentencing.

These claims fail because counsel was not ineffective. First, as Mr. Vekaria acknowledges (Civ. Doc. # 6 at 3), "the fast-track program is only available to an eligible defendant charged under 8 U.S.C. § 1326 with illegally re-entry after having been previously removed from the United States." (Civ. Doc. # 4 at 7). Because Mr. Vekaria was convicted of

---

[2] To the extent the Motion could be liberally construed as asserting an ineffective assistance of counsel claim regarding the decision to plead guilty, such a claim would fail on the merits. Mr. Vekaria has not met the heavy burden of showing that his sworn statements during his plea colloquy were false. <u>See</u> <u>Winthrop-Redin v. United States</u>, 767 F.3d 1210, 1217 (11th Cir. 2014) ("[B]ecause Winthrop–Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). Mr. Vekaria's sworn statements establish that he knowingly and voluntarily entered the guilty plea after having ample time to discuss the case and the plea agreement with Mr. Brown and without any threats or promises being made. (Crim. Doc. # 67).

conspiracy to commit money laundering, he was not eligible for this program. Thus, Mr. Vekaria's counsel was not ineffective for failing to discuss this program with Mr. Vekaria or seek entry into this program. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). And Mr. Vekaria has not established that he was prejudiced by any such failure by counsel to explain a program for which he was ineligible. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

Even assuming the fast-track program could apply to a defendant charged with conspiracy to commit money laundering, Mr. Vekaria still has not established that he was prejudiced by his counsel's failure to discuss the program with him or attempt to negotiate entry into the program with the United States. The Court could only grant the four-level reduction under USSG § 5K3.1 "[u]pon motion of the Government." USSG § 5K3.1. But Mr. Vekaria has not met his burden of showing that the United States would have been willing to move for such reduction even if Mr. Vekaria's counsel had sought it. See

9

Williams v. United States, 985 F.3d 813, 821 (11th Cir. 2021) ("When a case turns on an issue of historical fact, the available evidence, whether traffic footage or the legal landscape of yesteryear, must satisfy the burden of proof on the disputed issue. If the evidence is silent or in equipoise, then the party with the burden fails.").

Next, Mr. Vekaria complains that Mr. Brown should have prevented the Court from imposing the USSG § 2B1.1(b)(9)(A) enhancement. (Civ. Doc. # 1 at 1; Civ. Doc. # 6 at 1). Under this guideline, "[i]f the offense involved . . . a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or *a government agency*," a two-level enhancement applies. USSG § 2B1.1(b)(9)(A) (emphasis added). According to Mr. Vekaria, "some of the alleged named codefendants . . . did not receive[]" this enhancement (Civ. Doc. # 1-1 at 1), although he never identifies them. Mr. Vekaria faults Mr. Brown for not "present[ing] factual evidence showing that the other co-defendants did not receive[] the two-level enhancement under USSG § 2B1.1(b)(9)(A)." (Civ. Doc. # 6 at 1).

10

This argument fails. Mr. Brown was not ineffective regarding the imposition of the USSG § 2B1.1(b)(9)(A) enhancement. The plea agreement's factual basis to which Mr. Vekaria agreed states that the "overseas conspirators often falsely and fraudulently identified themselves as federal law enforcement officers, such as Social Security Administration officials or Federal Bureau of Investigation agents." (Crim. Doc. # 31 at 18). Nevertheless, Mr. Brown objected to the application of this enhancement, emphasizing that Mr. Vekaria "made no such representations [personally] and [the enhancement] should not be applied to [Mr. Vekaria] if none of the other defendants received it." (Crim. Doc. # 51 at 24). In his sentencing memorandum, Mr. Brown asked the Court to "appl[y] the same but not additional specific offense enhancements than his Co-Defendants," expressing a concern that Mr. Vekaria not face a sentencing disparity caused by different application of enhancements. (Crim. Doc. # 44 at 3). Furthermore, at sentencing, Mr. Brown reiterated his objection.

The Court overruled this objection because other members of the conspiracy represented they were federal agents. (Crim. Doc. # 65 at 11-12). That is, despite Mr. Brown's

11

zealous advocacy, the Court determined that this enhancement was appropriate under the evidence. The fact that the objection was overruled does not establish that Mr. Brown performed ineffectively in raising it. See Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) ("We have long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel."); Walker v. United States, No. 2:11-cv-04-WKW, 2013 WL 1917381, at *3 (M.D. Ala. May 8, 2013) ("[T]he court overruled the objection [at sentencing], notwithstanding trial counsel's vigorous argument. The fact that Mr. Walker believes that his counsel did not do enough to forestall the sentencing enhancement is insufficient on this record to show that 'counsel's performance fell below an objective standard of reasonableness.'" (citation omitted)). Even if Mr. Brown had been ineffective, there was no prejudice because this Court would have imposed the enhancement based upon the evidence that other members of the conspiracy impersonated agents with the FBI and Social Security Administration. (Crim. Doc. # 31 at 18; Crim. Doc. # 51 at 24-25); see Malara v. United States, No. 8:21-cr-66-KKM-AAS, 2024 WL 4534184, at *7 (M.D. Fla. Oct. 21, 2024) (finding no prejudice where a petitioner did

12

not "show a reasonable probability that the district court would have sustained a relevant-conduct objection and imposed a shorter sentence absent counsel's allegedly deficient performance").

Third, counsel was not ineffective for failing to obtain a minor-role reduction for Mr. Vekaria. Before and during sentencing, Mr. Brown zealously argued that a minor-role reduction should be awarded to Mr. Vekaria. (Crim. Doc. # 44; Crim. Doc. # 51 at 22-23; Crim. Doc. # 65 at 10). Mr. Brown highlighted exactly the facts that Mr. Vekaria faults him with supposedly not presenting to the Court, including the "comparative roles of co-defendants, [Mr.] Vekaria's limited duration and earnings, [Mr.] Vekaria's lack of knowledge regarding the conspiracy, [Mr.] Vekaria's lack of managerial authority and [Mr.] Vekaria's subordinate, task-oriented function as a driver only." (Civ. Doc. # 6 at 3). Indeed, in the sentencing memorandum, Mr. Brown wrote that Mr. Vekaria worked as a driver and would "receive instructions from [an organizer of the conspiracy] about picking up the runner (Perez or Rivera), where to go, what the runner should tell the bank tellers, and what to withdraw (stolen funds)" and "where to take the stolen funds." (Crim. Doc. # 44 at 2). The

13

sentencing memorandum noted that Mr. Vekaria was "paid $200.00 per day" and only made seven driving trips over four months despite the four-year length of the conspiracy. (Id. at 2-3). The sentencing memorandum further emphasized that "Mr. Vekaria had no decision-making authority and never recruited anyone" and "was never involved in the call centers or what they were doing or what they were saying." (Id. at 3).

Despite counsel's argument, the Court overruled this objection, finding that Mr. Vekaria was not a minor participant in the conspiracy even though there were also participants with larger roles. (Crim. Doc. # 65 at 15). Again, the overruling of Mr. Vekaria's objection does not establish that Mr. Brown was ineffective in seeking the minor-role reduction on Mr. Vekaria's behalf. See Walker, 2013 WL 1917381, at *3 ("[T]he court overruled the objection [at sentencing], notwithstanding trial counsel's vigorous argument. The fact that Mr. Walker believes that his counsel did not do enough to forestall the sentencing enhancement is insufficient on this record to show that 'counsel's performance fell below an objective standard of reasonableness.'" (citation omitted)). Mr. Vekaria also has

14

not shown prejudice because he cannot show a reasonable probability that the Court would have sustained the minor-role objection and imposed a shorter sentence absent counsel's allegedly deficient performance in arguing the objection. See Malara, 2024 WL 4534184, at *7 (finding no prejudice where a petitioner did not "show a reasonable probability that the district court would have sustained a relevant-conduct objection and imposed a shorter sentence absent counsel's allegedly deficient performance").

Finally, Mr. Vekaria alludes in the title of his Motion to "actual innocence," although he does not develop such an argument in the Motion. (Civ. Doc. # 1 at 1). The Court emphasizes that "[a]ctual innocence is not itself a substantive claim." United States v. Montano, 398 F.3d 1276, 1284 (11th Cir. 2005). Rather, actual innocence is an exception to procedural default or the statute of limitations, but procedural default and the statute of limitations are not issues here. Therefore, any freestanding actual innocence claim Mr. Vekaria may be trying to assert fails.

Even if a freestanding claim of actual innocence could be asserted, such claim would fail. First, this claim, even

15

as elaborated on in the reply (Civ. Doc. # 6 at 1-2), is conclusory such that relief cannot be granted. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that conclusory statements, unsupported by specific facts or the record, are insufficient to demonstrate entitlement to habeas relief). Second, Mr. Vekaria primarily argues that he is "actually innocent of . . . [the] sentencing enhancement under USSG § 2B1.1(b)(9)(A)," but does not argue that he is actually innocent of the offense of conspiracy to commit money laundering. (Civ. Doc. # 6 at 1). Third, Mr. Vekaria's claim of actual innocence is undermined by his under-oath statements at his change of plea hearing. Again, he admitted the truth of the factual basis for his plea during his plea colloquy. (Crim. Doc. # 67 at 31-35). And Mr. Vekaria has not met the heavy burden of showing that his statements during his plea colloquy were false. See Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) ("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). Therefore, such a claim of actual innocence would alternatively fail on the merits.

The Motion is denied.

16

## III. **Evidentiary Hearing**

As the Court readily determined that Mr. Vekaria's Motion lacks merit, no evidentiary hearing is required. See 28 U.S.C. § 2255(b) (stating that an evidentiary hearing is not necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); see also Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015) ("To establish that he is entitled to an evidentiary hearing, Hernandez had to allege facts that would prove that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance.").

## IV. **Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied**

The Court declines to issue a certificate of appealability because Mr. Vekaria has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mr. Vekaria to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Mr. Vekaria shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

17

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Jignesh Purushottambhai Vekaria's pro se construed 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. ## 1 & 1-1; Crim. Doc. ## 74 & 75) is **DENIED**.

(2)   The Clerk is directed to enter judgment in favor of the United States of America and against Mr. Vekaria and, thereafter, to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of March, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

18